661 S.E.2d 339

**VENTURES SOUTH CAROLINA, LLC, D/B/A SUNCRUZ CASINOS, Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF REVENUE, Respondent.**

No. 26486.

Supreme Court of South Carolina.

Heard Jan. 23, 2008.

Decided May 12, 2008.

Zoe Sanders Nettles, and Dwight F. Drake, both of Nelson, Mullins, Riley & Scarborough, of Columbia, for Appellant.

Harry A. Hancock, of South Carolina Department of Revenue, of Columbia, for Respondent.

Justice BEATTY.

The operator of a gambling cruise ship appeals the Administrative Law Court's (the ALC's) finding that section 3–11–400 of the South Carolina Code requires monthly reports of gross proceeds, not just the percentage of winnings to losses. We reverse.

## FACTUAL/PROCEDURAL BACKGROUND

The enactment of section 3–11–400 took effect on June 1, 2005. At that time, Appellant Ventures South Carolina, LLC, (hereinafter, "SunCruz") operated a gambling cruise vessel under the name of "SunCruz Casinos" out of Horry County. Pursuant to section 3–11–400, SunCruz submitted reports to the Department of Revenue detailing only the percentage of winnings to losses. Because the Department was required to determine the "form and format" of the monthly report, it developed a form requiring gambling cruise operators to report the amount of money taken in and paid out per machine and the total percentage of wins and losses per machine. On September 15, 2005, the Department wrote a letter to Sun-Cruz informing it that the reports submitted did not meet the statutory requirements because SunCruz did not use the forms developed by the Department. The Department requested that SunCruz complete the required form within ten days or else fines would be imposed up to $41,500 per day for each day the report was late. SunCruz responded, arguing the statute only required it to report the percentage of wins

and losses, and not the total amount taken in and paid out. Because the parties could not reach an agreement on the matter, a contested hearing was held before the ALC on May 8, 2006.

After the hearing, the ALC issued an order siding with the Department. The ALC noted that although section 3–11–400(C) stated gambling cruise operators had to report the average daily percentage of winnings to losses per machine, it also required the Department to conduct an annual audit to verify the percentages and allowed the counties to tax the gross proceeds and impose a surcharge per ticket sold. Interpreting these subsections together, the ALC concluded the Department could require the gambling cruise operators to report the amount of money in and amount paid out per machine. Otherwise, the ALC reasoned, the counties could not determine the amount of profits to tax and the Department would not be able to conduct an audit. Thus, the ALC found SunCruz must include in its report the amount wagered and the amount paid out as prize money for each machine operated. The Department's motion to certify SunCruz's appeal from the Court of Appeals to this Court was granted.

## DISCUSSION

SunCruz argues the ALC erred in its interpretation of section 3–11–400(C)(3)(b)(i) because the clear language of the statute requires the reporting of only the average daily percentages of winnings to losses per gambling device, not the total amount wagered and paid out.

The primary purpose in interpreting statutes is to ascertain the intent of the Legislature. *Hodges v. Rainey,* 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). "We cannot construe a statute without regard to its plain and ordinary meaning, and this Court may not resort to subtle or forced construction in an attempt to limit or expand a statute's scope." *New York Times Co. v. Spartanburg County Sch. Dist. No. 7,* 374 S.C. 307, 310, 649 S.E.2d 28, 29–30 (2007). "Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Hodges,* 341 S.C. at 85, 533 S.E.2d at 581. The statute's

language is considered the best evidence of legislative intent. *Id.* However, the Court will reject the plain meaning of the words used in a statute if it would lead to an absurd result and will "construe the statute so as to escape the absurdity and carry the intention into effect." *Ray Bell Constr. Co. v. Sch. Dist. of Greenville County,* 331 S.C. 19, 26, 501 S.E.2d 725, 729 (1998).

■ Turning to the instant case, section 3–11–400 provides that a county or municipality may assess a surcharge of up to ten percent of each ticket sold per cruise and a surcharge of up to five percent of the gross proceeds of each gambling vessel. S.C.Code Ann. § 3–11–400(C)(2) (Supp.2007). The section further provides:

(b)(i) *Each gambling vessel must report to the Department of Revenue, on a monthly basis, the average daily percentage of winnings to losses for each gambling device used on a gambling vessel.* The report must be delivered to the Department of Revenue on the twentieth day of the month for the preceding month, in a form and format determined by the department. If no gambling devices are used, the gambling vessel must report to the department that no gambling devices were used. *The department must perform an annual audit to verify the accuracy of the reports.*

. . .

(iii) The department must make this information available, on a quarterly basis, to the governing body of the county or municipality from which the gambling vessel originates and to the general public.

. . .

(iv) The department is authorized to promulgate regulations to implement the provisions of this subsection.

S.C.Code Ann. § 3–11–400(C)(3)(b)(i), (iii), (iv) (Supp.2007) (emphasis added).[1]

---

1. Section 3–11–400(C)(3)(b)(iv) authorizes the Department to promulgate regulations to implement the provisions of "this subsection," meaning subsection (C) in its entirety. Thus, if the Department promulgated regulations requiring a monthly report of money taken in and paid out per machine, SunCruz must comply.

A clear reading of section 3–11–400(C)(3)(b)(i) only requires the reporting of percentages of daily wins and losses and allows the Department to draft a form for the reporting of this data. Although the statute also allows the Department to obtain information, including the total amount of money taken in and paid out, to confirm the percentages for an *annual* audit, it does not require *monthly* reports of this information. Further, although section 3–11–400(C)(3)(b)(iv) authorizes the Department to promulgate regulations to further implement this section, the Department admitted at oral argument that it has not promulgated any regulations requiring monthly reports of total monies paid in and paid out at this time. Thus, the Department is currently exceeding its power to collect information regarding gross proceeds from gambling cruise operators.[2]

Accordingly, the finding of the ALC is

**REVERSED.**

TOAL, C.J., MOORE and PLEICONES, JJ., concur.

WALLER, J., dissenting in a separate opinion.

Justice WALLER.

In my opinion, the Administrative Law Court properly construed the statute at issue in this appeal. Therefore, I respectfully dissent.

As noted by the majority, the primary rule of statutory construction is to ascertain and effectuate the intent of the Legislature. *E.g., Hodges v. Rainey,* 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). When construing statutory language, the statute must be read as a whole, and sections which are part of the same general statutory law must be construed together and each one given effect. *TNS Mills, Inc. v. South Carolina Dep't of Revenue,* 331 S.C. 611, 620, 503 S.E.2d 471, 476 (1998). Furthermore, "[a] statute should not be construed by concentrating on an isolated phrase." *South Carolina*

---

**2.** The Department concedes that absent the requirement to audit, the statute limits the information required to be reported monthly to daily percentages of winnings to losses. On the other hand, SunCruz concedes that the Department is entitled to "gross proceeds" information during its annual audit.

*State Ports Auth. v. Jasper County,* 368 S.C. 388, 398, 629 S.E.2d 624, 629 (2006).

The Gambling Cruise Act (the Act) is found in Chapter 11 of Title 3 of the South Carolina Code. The Legislature explicitly outlined the intent of the Act as follows:

It is the intent of the General Assembly to delegate to counties and municipalities of this State the authority to prohibit or regulate the operation of gambling vessels that are engaged in voyages that depart from the territorial waters of the State, sail into United States or international waters, and return to the territorial waters of the State without an intervening stop.

2005 Act No. 104 § 1. Before the Act was signed into law, counties and municipalities were not able to prohibit or regulate these gambling cruises, also known as "cruises to nowhere." *See Palmetto Princess, LLC v. Town of Edisto Beach,* 369 S.C. 50, 53 n. 2, 631 S.E.2d 76, 78 n. 2 (2006).

With regard to S.C.Code Ann. section 3–11–400(C), the Legislature expressly authorized counties to impose and collect surcharges on (1) gambling vessel ticket sales, and (2) the gross proceeds of the vessels. The entire text of section 3–11–400(C) provides as follows:

(1) **For purposes of this section, "gross proceeds" means the total amount wagered or otherwise paid, in cash or credit, by a passenger or user of a gambling device aboard a gambling vessel.**

(2) If a county or municipality does not adopt an ordinance prohibiting a gambling vessel from operating, or if a gambling vessel other than a passenger cruise liner is permitted to operate because that gambling vessel, on each cruise, makes an intervening stop in another State, possession of the United States, or foreign country, **the county or municipality may assess a surcharge of up to ten percent of each ticket sold per gambling cruise, and a surcharge of up to five percent of the gross proceeds of each gambling vessel.**

(3)(a) **If a county or municipality assesses the surcharges set forth in item (2), then the proceeds of the surcharges are to be paid to the county or municipality from which the gambling vessel originates its cruise.** The county or

municipality is responsible for setting forth the procedures by which the proceeds are paid to the county or the municipality.

(b)(i) **Each gambling vessel must report to the Department of Revenue, on a monthly basis, the average daily percentage of winnings to losses for each gambling device used on a gambling vessel.** The report must be delivered to the Department of Revenue on the twentieth day of the month for the preceding month, **in a form and format determined by the department.** If no gambling devices are used, the gambling vessel must report to the department that no gambling devices were used. **The department must perform an annual audit to verify the accuracy of the reports.**

(ii) A gambling vessel that fails to deliver **the report of winnings and losses** to the department may be assessed a civil penalty up to the amount of one hundred dollars per day per gambling device for each day that the report is late.

(iii) **The department must make this information available, on a quarterly basis, to the governing body of the county or municipality from which the gambling vessel originates and to the general public. In addition, quarterly reports must be submitted to the Governor, the President Pro Tempore of the Senate, and the Speaker of the House of Representatives.**

(iv) The department is authorized to promulgate regulations to implement the provisions of this subsection.

S.C.Code Ann. § 3–11–400(C) (Supp.2007) (emphasis added).

First, it is significant to note the monthly report required by subsection 3–11–400(C)(3)(b)(i) must be filed with respondent "in a form and format determined by" respondent. The form reasonably chosen by respondent requires inclusion of the amounts wagered and the amounts paid out as winnings. I agree with respondent that if the monthly report contained **only** information regarding "the average daily percentage of winnings to losses," there would be no substantive information by which respondent could verify the report. This verification clearly is essential for respondent to be able to conduct its annual audit, and also is necessary so respondent can dis-

charge its duty to provide the mandated quarterly reports. *See* §§ 3–11–400(C)(3)(b)(i) & (iii).

Moreover, without some kind of reporting on the actual amounts wagered, and the amounts paid out, there would be no data on which the counties and municipalities could compute "gross proceeds." Yet, the counties and municipalities are expressly allowed to tax the gross proceeds of these gambling vessels. *See* §§ 3–11–400(C)(1), (2) & (3)(a).

In my opinion, "the average daily percentage of winnings to losses" phrase contained in subsection 3–11–400(C)(3)(b)(i) simply cannot be read in isolation. It must be read and harmonized with all the language of section 3–11–400(C), and with the overall intent of the Act which the Legislature has clearly stated. As respondent aptly argues, the result of the majority's interpretation of the statute would lead to the absurd result that counties and municipalities have the ability to levy a tax on the gross proceeds of a gambling vessel, but the gambling vessel is not required to report these gross proceeds. Such a result is patently absurd, and I reject that this is what the Legislature intended. *See, e.g., Kiriakides v. United Artists Communications, Inc.,* 312 S.C. 271, 275, 440 S.E.2d 364, 366 (1994) ("However plain the ordinary meaning of the words used in a statute may be, the courts will reject that meaning when to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the Legislature or would defeat the plain legislative intention.").

For these reasons, I would affirm the ALC's decision