Bill A. SEGARS, Plaintiff,

v.

Jorge GOMEZ, Defendant.

Civ. A. No. 72–813.

United States District Court,
D. South Carolina,
Aiken Division.

Oct. 16, 1972.

Robert E. Staton, Columbia, S. C., for plaintiff.

J. Means McFadden, Columbia, S. C., for defendant.

### ORDER

SIMONS, District Judge.

By Order dated September 8, 1972, this court dismissed the service of the Summons and Complaint in the within action for lack of personal jurisdiction of the non-resident defendant. This matter is again before the court on plaintiff's Motion to Amend or Alter the Order above referred to, on the grounds that no consideration was given by the court—or by counsel for either party in their Briefs on the issues—to a recent enactment of the South Carolina General Assembly which was signed into law on June 2, 1972.[1] This court has now directed itself to the effect of the new statute on the litigation, and counsel for both parties have submitted written memoranda and oral arguments have been heard on the issue. My decision is that this court's previous Order should be retracted, that the service of the plaintiff's Summons and Complaint be upheld, and that this court has personal jurisdiction of the defendant by virtue of this state's Long Arm Statute as amended by the current Legislature.

The Complaint herein sets forth a cause of action in tort for malpractice by defendant, alleged to have occurred in South Carolina in June and July 1971 during which time he practiced medicine as a general surgeon at the Barnwell County Hospital. In August 1971, defendant accepted a position as staff surgeon at the Henry Ford Hospital in Detroit, Michigan, and since then has established his residence and domicile in that state. This action was commenced by the filing of the Complaint on June 28, 1972; shortly thereafter, service of the Summons and Complaint was had by personally serving the papers upon defendant's wife at their home in Southfield, Michigan.

Originally, plaintiff urged that such out-of-state service on a non-resident defendant was valid under Section 10.2–803(1)(c) of the 1962 Code of Laws of South Carolina, as amended. That statute provides, "A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's commission of a tortious act in whole or in part in this State." This statute is a part of the version of the Uniform Commercial Code adopted by the State of South Carolina, and obviously the section quoted has no relation to commercial transactions. Indeed, such was the basis of

1. Senate Bill No. S 893.

this court's prior Order in this action: the statute contravened Article III, Section 17 of the Constitution of South Carolina, which provides, "Every Act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title." The title to the Uniform Commercial Code, as enacted by the South Carolina legislature, made no mention of tort claims for personal injuries, a defect fatal to the statute's validity. This court had previously so held in Weathersbee v. Britt, Opinion No. 71–781 (D.S.C.Nov. 24, 1971), which is unreported, and in McGee v. Holan Division of Ohio Brass Company, 337 F.Supp. 72 (D.S.C.1972).

Such rulings of unconstitutionality—both in this court and in lower state courts—prompted the legislature to reenact Part Eight of Article Two of the Uniform Commercial Code, the part embracing Section 10.2–803(1)(c). The reenactment transported a title tailored to satisfy the constitutional requirement. The caption follows:

An Act To Reenact Part 8 Of Article 2 Of Act 1065 Of 1966, Relating To The Uniform Commercial Code, So As To Make The Provisions Of Part 8 Which Relates To Certain Definitions, Personal Jurisdiction Based Upon Enduring Relationship, Personal Jurisdiction Based Upon Conduct, Provision For Service Outside The State And To State That Other Bases of Jurisdiction Shall Be Unaffected, To Establish A Manner And Proof of Service, To Establish Individuals Eligible To Make Service, To Establish Individuals To Be Served And To Provide That Other Provisions Shall Remain Unaffected.

The legislative intent of the reenactment is stated in the preamble to the statute:

Whereas, Part 8 of Article 2 of Act 1065 of 1966 was added to the act by amendment from the floor during its debate and passage in the General Assembly and the amendment was not reflected in the title of the act and has been held in the circuit courts of the State to be invalid because the amendment did not meet the requirements of Section 17 of Article III of the Constitution of this State which states "Every act or resolution having the force of law shall relate to but one subject and that shall be expressed in the title"; and

Whereas, in order to make the provisions of Part 8 of Article 2, valid, the members of the General Assembly believe that Part 8 of Article 2 as reenacted herein shall cure any constitutional invalidity and that after passage of this act no constitutional question shall attach to the provisions thereof.

Thus titled and prefaced, Sections 10.2–801 through 10.2–809 of the 1962 South Carolina Code of Laws, as amended, were relegislated. The act further provided, "This act shall take effect upon approval by the Governor," and it appears that after the bill passed both houses of the legislature, the governor signed the bill on June 2, 1972.

Thus the issue before this court upon plaintiff's Motion to Amend the court's prior Order is the effect to be given to this reenactment. Assuming that the statute in question was ineffective prior to the reenactment, nevertheless the service here was had after the reenactment.[2] But the alleged conduct giving rise to the cause of action transpired before the reenactment, so a sharper definition of the issue is whether the reenacted statute will apply retroactively so jurisdiction will attach to pre-reenactment conduct.

There are myriad rules of statutory construction that deal with retroactivity. The beginning principle is that statutes are construed to operate

---

2. Unquestionably, that the service postdated the reenactment was completely fortuitous. As has been indicated, plaintiff's first premise was that the original § 10.2–803(1)(c) was a valid act. The reenactment was brought to the court's attention by this Motion after decision had already been reached in the matter.

prospectively unless there is clear legislative intent to the contrary. A principal exception to this rule is that remedial or procedural statutes are generally held to operate retrospectively. Thus a statute merely affecting the remedy, or law of procedure, applies to actions begun after its passage, whether the right of action accrued before or after the change in the law. There is authority that a statute conferring jurisdiction may operate to give jurisdiction over causes of action arising before the passage of the act. See 82 C.J.S. Statutes § 414 et seq. Of course, whether a statute operates prospectively or retroactively is a matter of legislative intent, and all of the rules stated above must bow to any clear statement of legislative purpose.

■ The particular statute with which we are here concerned falls within the definition of a curative statute, legislation whose purpose is to cure past errors, omissions, and neglects, and thus to make valid what, before the enactment of the statute, was invalid. Such an act by nature is retrospective, for it intends to give legal effect to some past act or transaction which was ineffective because of neglect to comply with some requirement of law. Thus a legislature by retrospective statute may cure mere irregularities in prior proceedings; it may ratify and validate any past act which it could originally have authorized provided it still has the power to authorize it, and its authorization does not impair vested rights. There is authority that acts done in conformity with a statute which, although clearly within the legislature's power to enact, was invalid by reason of some defect in form or sufficiency, may be validated by curative statute, despite a prior judicial declaration of the unconstitutionality of the statute. 16A C.J.S. Constitutional Law § 421 et seq.

The leading South Carolina case on the retroactive effect of curative statutes is Green v. City of Rock Hill, 149 S.C. 234, 147 S.E. 346 (1929). This was a class action brought against the city contesting the validity of a proposed contract to construct a water supply system. The petitioners based their argument on what is referred to in the decision as the "act of 1914," which established the commission form of government for Rock Hill. One section of the "act of 1914" provided that, upon the adoption of the commission form of government, the duties of the board of commissioners of public works would devolve upon the city council, and the board of commissioners of public works would thereby be abolished. However, this particular section of the "act of 1914" was omitted from the 1922 codification of the state statutes, and it was conceded that the effect of the failure of the codifiers to incorporate that part of the "act of 1914" in the Code of 1922 was to render that act inoperative after the effective date of the adoption of the Code. Upon this happenstance the petitioners based their claim that the Rock Hill city council was without authority to enter into a contract dealing with a water supply system. But during the pendency of that litigation, the General Assembly ratified several acts which "were intended to cure the inoperative status of the act of 1914, as amended, and were especially and expressly directed to the purpose of re-enacting such inoperative statutes, with retroactive effect, and of validating the acts of the city of Rock Hill taken during the period of time the statutes were so rendered inoperative." 147 S.E. at 352.

The South Carolina Supreme Court, hearing the case in its original jurisdiction, found that the validating acts passed in 1929 were "plainly curative and remedial in character, and are clearly applicable to the pending controversy. . . . It is a well-settled general rule that the Legislature, by a curative or validating statute which is necessarily retrospective in character and retroactive in effect, can 'validate any act which it might originally have authorized.' [Citations omitted]. Obviously, the General Assembly possessed the same powers to re-enact, with retroactive effect, the act of 1914, and the act

of 1921 amendatory thereof, that it had to enact the said statutes originally." 147 S.E. at 352. Thus the court held that, by virtue of the curative acts, the city council was vested with the authority conferred upon the board of commissioners of public works to contract for building waterworks.

■ Examined in the light of the foregoing principles and *Green*, the reenacted statute is effective to confer jurisdiction here. Obviously the legislature, when it passed the Uniform Commercial Code in 1966, intended the unique "Further Remedies" (Part 8 of Article 2) to be of equal force and effect as the rest of the Code.[3] This purpose was thwarted when the legislature failed to include in the Uniform Commercial Code's title any description of the "Further Remedies" provisions. As several courts ruled the statute unconstitutional, the legislature determined to rid the act of its fatal infirmity by reenacting the provisions with appropriate title. The preamble to the reenactment unequivocably states the legislature's purpose: "[I]n order to make the provisions of Part 8 of Article 2 valid, the members of the General Assembly believe that Part 8 of Article 2 as reenacted herein shall cure any constitutional invalidity and that after passage of this act no constitutional question shall attach to the provisions thereof." Thus I find that the reenacted legislation is valid and must be applied to this action.

Further authority for my holding that the reenacted statute applies to confer jurisdiction over alleged conduct that occurred prior to the reenactment is found in the following discussion in 62 Am. Jur.2d Process § 80:

> With respect to the question whether a long-arm statute is applicable even though the act or transaction on which jurisdiction is predicated occurred prior to its effective date, a distinction has been made between statutes which provide by their terms merely that the acts or transactions specified therein shall be the basis of the jurisdiction of local courts over, or extraterritorial service on, nonresidents, and those enactments, often called "implied consent" statutes, which by their terms provide that such acts or transactions are deemed to be the consent of the nonresident to the appointment of a local officer as agent for the purpose of service of process. The general rule that in the absence of a statutory provision to the contrary, statutes pertaining to procedure operate retrospectively, has been applied to the kind of long-arm statutes first described. Under this view the retroactive application of such a statute is not precluded by the fact that the act or transaction upon which jurisdiction is predicated occurred prior to the effective date of the statute. On the other hand, "implied consent" statutes have generally been held not to operate retroactively so as to extend to acts or transactions occurring prior to the effective date of the statute.

Of course this action is not predicated on an "implied consent" statute, but instead on a statute providing for jurisdiction over, and actual service upon, a nonresident defendant who has allegedly committed a tort in the forum state.

A case involving a very similar statute—and also substantially similar facts—is Hoen v. District Court of County of Arapahoe, 159 Colo. 451, 412 P.2d 428 (1966). There the tort in question—an automobile accident—occurred in 1960, and not until 1965 was a statute passed which gave the Colorado courts jurisdiction over non-resident defendants who committed torts within the state. That act, like the one with which this court is faced, also provided for service of proc-

3. The "Further Remedies" provisions are not a part of the Uniform Commercial Code as drafted by the American Law Institute and the National Conference of Commissioners of Uniform Laws. See discussion in McGee v. Holan Division of Ohio Brass Company, 337 F.Supp. 72 (D.S.C.1972).

ess on such a defendant. After the 1965 law was passed, a Complaint was filed relating to the 1960 accident, and the defendant was served with process. Defendant moved to quash service, contending the statute could not be given retroactive effect. On appeal, contrary to the trial court's ruling the statute was held to have retroactive application:

> But whether this matter of retrospectivity be deemed a matter of semantics only, or not, petitioners urge that the statute is procedural or remedial in its nature, and does not relate to substantive rights. Being, then, a procedural statute, it can and should be applied in a situation where, as here, the tortious act complained of occurred prior to the effective date of the statute, unless there be a clear legislative intent that it be not so applied. And, it is argued that for a variety of reasons the 1965 General Assembly intended that it should be just so applied.

Much has been written about the so-called retrospective application of a statute of this general type. And admittedly there is not a unanimity of judicial thought on the matter. However, the better reasoned and more persuasive point of view, to us, is that such a statute may be constitutionally applied to one in Nealon's position, i. e., where the complaint is filed *after* the effective date of the statute, though the tortious act complained of occurred *before* the effective date of the statute. No good purpose would be served by setting forth in detail our reasons for so holding. Suffice it to say that in support of this conclusion and as illustrative of our thinking on this subject, see McGee v. International Life Insurance Co., 355 U. S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 [further citations omitted].

Thus I find that South Carolina's reenacted long-arm provisions, as applicable to the specific facts of this case, can be retroactively applied to pre-reenactment conduct without violence to due process principles. *International Shoe* established that "due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. at 158. Thus the modern trend has been in favor of the recognition of the power of a state to provide, in proper cases, for bringing in a nonresident individual who has committed acts in the state of the forum by something other than personal service of process upon him within the forum state. And the "minimum contacts" test has been held applicable to individuals as well as to corporations. See discussion at 62 Am.Jur.2d Process § 79 and cases cited therein.

Here the defendant availed himself of the opportunity to practice medicine in this state, and did so practice for a significant period of time, in excess of one year. During that time, the complaint alleges that the defendant improperly treated plaintiff's arm fracture. Thus at the time of the commission of the alleged tort, the defendant was unquestionably subject to the jurisdiction of the state court. Further, the state legislature had at that time expressed its intention that a nonresident committing a tort in this state should be subject to service outside the state, although the execution of that intention was thwarted by a technical deficiency —which deficiency has now been cured. After the conduct complained of in the Complaint, the defendant relocated himself and his practice outside of this state. Certainly this court impugns no ill motive to defendant's departure from South Carolina. But I have no difficulty in holding that while he was here, he had the requisite "minimal contacts" with this state so that he must now be

held to answer for any alleged malpractice during his sojourn here.

Plaintiff's Motion to Amend the court's Order in this case dated September 8, 1972, is granted, and that Order is hereby rescinded. The service of the Summons and Complaint is upheld, and this court's jurisdiction attaches to the defendant. Rule 4(e), Federal Rules of Civil Procedure.

And it is so ordered.