736 S.E.2d 651

**HARLEYSVILLE MUTUAL INSURANCE
COMPANY, Petitioner,**

v.

**The STATE of South Carolina; The South Carolina Department
of Insurance; David Black, in his Official Capacity as Director
of the South Carolina Department of Insurance; Crossmann
Communities of North Carolina, Inc.; and Beazer Homes
Corp., Respondents.**

No. 27189.

Supreme Court of South Carolina.

Heard March 7, 2012.

Decided Nov. 21, 2012.

See also, 395 S.C. 40, 717 S.E.2d 589.

16

18

Chief Justice TOAL.

This Court accepted the petition of Harleysville Mutual Insurance Company (Petitioner) in its Original Jurisdiction to assess constitutional challenges to Act No. 26 of the South Carolina Acts and Joint Resolutions, which regulates coverage provided by commercial general liability (CGL) insurance policies for construction-related work. Act No. 26, 2011 S.C. Acts 88 [hereinafter Act. No. 26]. We hold that the retroactivity clause of Act No. 26 [1] violates the Contract Clauses of the state and federal Constitutions, and that the statute may only apply prospectively to CGL insurance contracts executed on or after its effective date of May 17, 2011.

## FACTS/PROCEDURAL BACKGROUND

On January 7, 2011, this Court issued an initial opinion in *Crossmann Communities of North Carolina, Inc. v. Harleysville Mutual Insurance Company*, Op. No. 26909 (S.C.Sup.Ct. filed Jan. 7, 2011) (Shearouse Adv. Sh. No. 1 at 32) (*Crossmann I*), wherein it addressed the definition of "occurrence" in a CGL policy. In *Crossmann I*, the Court held where "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," the term is unambiguous and retains its inherent fortuity requirement. *Crossmann I* at 46. Based on this determination, this Court found that Respondents Crossmann Communities of North Carolina, Inc. and Beazer Homes Investment Corporation (collectively Crossmann) were not entitled to coverage under Petitioner's CGL policy for claims arising out of damage to condominiums caused by faulty workmanship. *Id.* at 47.

Specifically, this Court reasoned that because "the damage to the insured's property [was] no more than the natural and probable consequences of faulty workmanship," there was "no fortuity element present under this factual scenario." *Id.* The Court elaborated that, "[f]or faulty workmanship to give rise to potential coverage, the faulty workmanship must result

---

1. Act. No. 26 is codified at S.C.Code Ann. § 38–61–70 (Supp.2011). The retroactivity clause of Act No. 26 provides, "This section applies to any pending or future dispute over coverage that would otherwise be affected by this section as to all commercial general liability policies issued in the past, currently in existence, or issued in the future." *Id.*

in an occurrence, that is, an unintended, unforeseen, fortuitous, or injurious event." *Id.* at 49. In so ruling, this Court overruled its earlier decision in *Auto Owners Insurance Company v. Newman,* 385 S.C. 187, 684 S.E.2d 541 (2009), on the ground that the *Newman* opinion "permitted coverage for faulty workmanship that directly causes further damage to property in the absence of an 'occurrence' with its fortuity underpinnings." *Id.*

On January 26, 2011, the General Assembly introduced Senate Bill 431, which was subsequently passed as Act No. 26 of the South Carolina Acts and Joint Resolutions and ratified on May 17, 2011 upon the Governor's signature. Act No. 26 was codified as section 38–61–70 of the South Carolina Code and provides in relevant parts:

(B) Commercial general liability insurance policies shall contain or be deemed to contain a definition of "occurrence" that includes:

(1) an accident, including continuous or repeated exposure to substantially the same general harmful conditions; and

(2) property damage or bodily injury resulting from faulty workmanship, exclusive of the faulty workmanship itself.

. . . .

(E) This section applies to any pending or future dispute over coverage that would otherwise be affected by this section as to all commercial general liability insurance policies issued in the past, currently in existence, or issued in the future.

S.C.Code Ann. § 38–61–70 (Supp.2011).

On May 23, 2011, this Court heard arguments on the petition for rehearing in *Crossmann I.* That same day, Petitioner filed a Petition for Original Jurisdiction in which it sought a declaration by this Court that Act No. 26 is unconstitutional. This Court granted the petition on July 7, 2011.

█ On August 22, 2011, this Court changed its initial position in *Crossmann I* and found in favor of coverage based on an "occurrence." *See Crossmann Cmties. of N.C., Inc. v. Harleysville Mut. Ins. Co.,* 395 S.C. 40, 717 S.E.2d 589 (2011)

(*Crossmann II*).[2]  In doing so, the Court reaffirmed its decision in *Newman* and clarified that "negligent or defective construction resulting in damage to otherwise non-defective components may constitute 'property damage,' but defective construction would not." *Id.* at 50, 717 S.E.2d at 594.  The Court further found that, "the expanded definition of 'occurrence' is ambiguous and must be construed in favor of the insured, and the facts of the instant case trigger the insuring language of Harleysville's policies." *Id.*

## ISSUES

I.   Whether Act No. 26 of the South Carolina Acts and Joint Resolutions unconstitutionally violates the separation of power doctrine.

II.  Whether Act No. 26 of the South Carolina Acts and Joint Resolutions is unconstitutional special legislation or deprives Petitioner of equal protection under the law.

III. Whether the retroactive application of Act No. 26 of the South Carolina Acts and Joint Resolutions unconstitutionally violates the state and federal Contract Clauses.

## STANDARD OF REVIEW

"This Court has a very limited scope of review in cases involving a constitutional challenge to a statute." *Joytime Distribs. & Amusement Co. v. State*, 338 S.C. 634, 640, 528 S.E.2d 647, 650 (1999).  "All statutes are presumed constitutional and will, if possible, be construed so as to render them

---

2.  We use the abbreviations *Crossmann I* and *Crossman II* for ease of reference in referring to the procedural history of this case.  In doing so, we do not suggest that *Crossman II* reverses *Crossmann I* or that there are two separate opinions from this Court.  An opinion of an appellate court is not final until the remittitur is filed in the lower court. *See, e.g., Brackenbrook North Charleston, LP v. Cnty. of Charleston*, 366 S.C. 503, 623 S.E.2d 91 (2005).  The timely filing of a petition for rehearing stays the sending of the remittitur, thereby depriving the decision of finality. *See State v. Hallock*, 277 S.C. 413, 288 S.E.2d 398 (1982).  *Crossmann I* was neither final nor enforceable because the remittitur was stayed.  After this Court granted rehearing and the parties reargued the case, we filed *Crossman II* and sent the remittitur.  Consequently, *Crossman II* is the only decision of this Court.

valid." *Id.* "A legislative enactment will be declared uncon-
stitutional only when its invalidity appears so clearly as to
leave no room for reasonable doubt that it violates a provision
of the constitution." *Id.*

ANALYSIS

## I. Separation of Powers Doctrine

█ Petitioner implores this Court to "strike down" Act No.
26 on the ground the General Assembly was without authority
to create legislation which attempts to overturn and directly
control this Court's ultimate decision in *Crossmann II.* Peti-
tioner contends that in adopting the current version of Act No.
26, the General Assembly violated the doctrine of separation
of powers.

█ The doctrine of separation of powers is succinctly
stated in our constitution:

In the government of this State, the legislative, executive,
and judicial powers of the government shall be forever
separate and distinct from each other, and no person or
persons exercising the functions of one of said departments
shall assume or discharge the duties of any other.

S.C. Const. art. I, § 8. The operational effect of this doctrine
is to prevent one branch of government from usurping the
power and authority of another. *Knotts v. S.C. Dep't of
Natural Res.,* 348 S.C. 1, 7, 558 S.E.2d 511, 514 (2002).

█ In explaining this constitutional provision in the con-
text of statutory interpretation, the Court has stated, "The
construction of a statute is a judicial function and responsibili-
ty." *Lindsay v. Nat'l Old Line Ins. Co.,* 262 S.C. 621, 628, 207
S.E.2d 75, 78 (1974). "Subject to constitutional limitations,
the legislature has plenary power to amend a statute. Howev-
er, a judicial [interpretation] of a statute is determinative of its
meaning and effect, and any subsequent legislative amend-
ment to the contrary will only be effective from the date of its
enactment and cannot be applied retroactively." *Id.* at 629,
207 S.E.2d at 78; *see Steinke v. S.C. Dep't of Labor, Licens-
ing, & Regulation,* 336 S.C. 373, 520 S.E.2d 142 (1999) (con-
cluding the General Assembly could not retroactively overrule
this Court's interpretation of a statute, but noting that the

General Assembly may resolve statutory conflict in future cases).

We find that the General Assembly did not violate the doctrine of separation of powers by enacting Act No. 26. As evidenced by the procedural and legislative history, it is clear the General Assembly wrote and ratified Act No. 26 in direct response to this Court's decision in *Crossmann I*. Had *Crossmann I* been this Court's final opinion, the doctrine might have been implicated. However, given that in *Crossmann II* we revised our initial decision in *Crossmann I*, we do not find that the General Assembly, in this instance, retroactively overruled this Court's interpretation of a statute. Any concern about Act No. 26's retroactive provision is best analyzed under a Contract Clause framework, which we address in Part III of this opinion.

## II. Special Legislation and Equal Protection

Petitioner next contends this Court should invalidate Act No. 26 as "special legislation" because it "is narrowly drafted to favor only a small section of one particular industry." Specifically, Petitioner claims Act No. 26 expands coverage for "construction professionals" performing "construction related work" under a CGL insurance policy, "but would not provide the same for a non-construction professional under an identical CGL insurance contract."

In a related argument, Petitioner asserts that Act No. 26 violates the Equal Protection Clause by "classifying and treating issuers of CGL policies differently than issuers of other types of insurance policies that make an 'occurrence' a prerequisite to coverage." Additionally, Petitioner argues that the "newly imposed definition of 'occurrence' applies only to certain CGL policies that insure a construction professional for liability arising from construction-related work." Ultimately, Petitioner claims there is no rational basis to warrant this differential treatment.[3]

---

3. In support of this position, Petitioner relies on *Broome v. Truluck*, 270 S.C. 227, 241 S.E.2d 739 (1978). In *Broome*, this Court found a statute violated equal protection as it granted immunity from suit after ten years to "architects, engineers, and contractors" engaged in the improvement of real property but not to owners and manufacturers of the components that went into the construction. We find *Broome* distin-

With respect to the prohibition against special legislation, our state constitution provides, "The General Assembly of this State shall not enact local or special laws ... where a general law can be made applicable." S.C. Const. art. III, § 34, cl. IX. "The purpose of the prohibition on special legislation is to make uniform where possible the statutory laws of this State in order to avoid duplicative or conflicting laws on the same subject." *Med. Soc'y of S.C. v. Med. Univ. of S.C.*, 334 S.C. 270, 279, 513 S.E.2d 352, 357 (1999).

Similarly, the Equal Protection Clauses of our federal and state constitutions declare that no person shall be denied the equal protection of the laws. U.S. Const. amend. XIV, § 1; S.C. Const. art. I, § 3. "Courts generally analyze equal protection challenges under one of three standards: (1) rational basis; (2) intermediate scrutiny; or, (3) strict scrutiny." *Denene, Inc. v. City of Charleston*, 359 S.C. 85, 91, 596 S.E.2d 917, 920 (2004). "If the classification does not implicate a suspect class or abridge a fundamental right, the rational basis test is used." *Id.* "Under the rational basis test, the requirements of equal protection are satisfied when: (1) the classification bears a reasonable relation to the legislative purpose sought to be affected; (2) the members of the class are treated alike under similar circumstances and conditions; and, (3) the classification rests on some reasonable basis." *Id.*

Recently, this Court reiterated the framework established in *Kizer v. Clark*, 360 S.C. 86, 600 S.E.2d 529 (2004), to determine whether special legislation exists and to assess potential equal protection violations. *Cabiness v. Town of James Island*, 393 S.C. 176, 712 S.E.2d 416 (2011). In *Cabiness*, this Court explained:

When a statute is challenged on the ground that it is special legislation, the first step is to identify the class of persons to whom the legislation applies. *Kizer*, 360 S.C. at 92–93, 600 S.E.2d at 532. In this regard, our special

---

guishable as the statute in that case provided immunity from suit to an exclusive group of individuals involved in the same property. Here, the General Assembly did not single out a particular group for preferential treatment but, instead, broadly covered the entire construction industry and construction professionals.

legislation framework largely tracts that for determining whether a statute violates one's right to equal protection. *Id.* at 93, 600 S.E.2d at 533. If the statute treats all class members equally, then the law is general legislation and permissible. *Id.* at 92–93, 600 S.E.2d at 532. The law must be general both in form and in operation. *Id.* at 93, 600 S.E.2d at 532.

If the legislation does not apply uniformly, the second step is to determine the basis for that classification. *Id.* It is well-settled that the mere fact a statute creates a classification does not render it unconstitutional special legislation. *Id.* Rather, it is only arbitrary classifications with no reasonable hypothesis to support them that are prohibited. *Id.* at 93, 600 S.E.2d at 533. Again, this parallels our analysis under the rational basis test for equal protection challenges. A classification is constitutional "if some intrinsic reason exists why the law should operate upon some and not upon all, or should affect some differently than others," or the special law "best meet[s] the exigencies of a particular situation." *Id.*

*Cabiness,* 393 S.C. at 189, 712 S.E.2d at 423. "The General Assembly must have a logical basis and sound reason for resorting to special legislation." *Med. Soc'y of S.C.,* 334 S.C. at 279, 513 S.E.2d at 357. "We will not declare a statute unconstitutional as a special law unless its repugnance to the Constitution is clear beyond a reasonable doubt." *Id.*

As a threshold matter, we question whether a special legislation analysis is applicable given Act No. 26 appears to be a general law in that it uniformly applies to all construction CGL insurance policies issued in South Carolina and, thus, is not "special" in the prohibited sense. Based on our review of the legislative history, it appears Act No. 26 was drafted as the result of lobbyists' efforts to combat the effects of *Cross-mann I.* This, however, did not transform Act No. 26 into special legislation. *See Kizer,* 360 S.C. at 93 n. 1, 600 S.E.2d at 532 n. 1 ("[T]he fact that a law was enacted as a result of lobbying does not transform it into special legislation."). Nevertheless, to the extent that Act No. 26 can plausibly be construed as special legislation, we have included a discussion of Petitioner's claim in conjunction with the equal protection issue.

■ Initially, we disagree with Petitioner's bare assertion that the Court should employ a "strict scrutiny" analysis. We conclude a "rational basis" test is applicable for a determination of whether Act No. 26 constitutes special legislation or violates the Equal Protection Clauses. We find that Act No. 26 withstands this minimal level of scrutiny as we believe the General Assembly had a logical reason and sound basis for enacting this provision.

■ It is well-established that the insurance industry is highly regulated by the General Assembly. As evidenced by this Court's discussion in *Crossmann II*, insurance coverage for construction liability lacks clarity and has been the subject of significant litigation, particularly with respect to whether construction defects constitute "occurrences" under CGL insurance policies. By ratifying Act No. 26, the General Assembly properly exercised its authority in an attempt to definitively resolve or at least minimize this frequently-litigated issue.

In order to address this limited area of insurance law, our state General Assembly promulgated a law that meets the exigencies of this situation and is consistent with prior and recent decisions of this Court. Thus, in this instance, we find that Act No. 26 does not constitute special legislation or violate equal protection.

### III.   Contract Clause

■ Finally, Petitioner argues that the retroactive application of Act No. 26 is unconstitutional in that such application violates the state and federal Contract Clauses. We agree.

■ South Carolina's constitution provides:

No bill of attainder, ex post facto law, **law impairing the obligation of contracts,** nor law granting any title of nobility or hereditary emolument, shall be passed, and no conviction shall work corruption of blood or forfeiture of estate.

S.C. Const. art. I, § 4 (emphasis added); *see also* U.S. Const. art. I, § 10 (also prohibiting the impairment of contracts). To establish a Contract Clause violation, the Court must examine "(1) whether there is a contractual relationship; (2) whether the change in the law impairs that contractual relationship;

and whether the impairment is substantial." *Hodges v. Rainey,* 341 S.C. 79, 93, 533 S.E.2d 578, 585 (2000) (citing *Gen. Motors Corp. v. Romein,* 503 U.S. 181, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992)).

It is undisputed a contractual relationship existed. Thus, we must ask whether the statute, as applied retroactively, substantially impairs insurance contracts. We hold that Act No. 26 substantially impairs the contractual relationship by mandating that all CGL policies be legislatively amended to include a new statutory definition of occurrence and by applying this mandate retroactively. While the dissent believes the new provision merely clarifies existing law, we find the statute fundamentally changes the definition of occurrence.

In *Newman,* this Court suggested "that a CGL policy *may* provide coverage where faulty workmanship causes third party bodily injury or damage to other property besides the defective work product" leaving open the possibility there may be instances where coverage might not be provided. 385 S.C. at 193, 684 S.E.2d at 544 (emphasis added); *see also Crossmann,* 395 S.C. at 50 n. 6, 717 S.E.2d at 594 n. 6 (holding "we elect to adhere to our precedent in *Newman* "). In doing so, *Newman* examined the interaction of the traditional definition of occurrence with the faulty workmanship exclusion in the insurance contract. Occurrence, as we confirmed in *Crossmann II,* traditionally means an "accident" or a "continuous or repeated exposure to substantially the same general harmful conditions." *Crossmann,* 395 S.C. at 47, 717 S.E.2d at 592; *Newman,* 385 S.C. at 192, 684 S.E.2d at 543. Here, however, the legislature has rewritten and expanded the traditional definition of occurrence to also mandate the inclusion of faulty workmanship:

> Commercial general liability insurance policies *shall* contain or be deemed to contain a definition of "occurrence" that includes:
>
> . . . .
>
> (2) property damage or bodily injury resulting from faulty workmanship, exclusive of the faulty workmanship itself.

S.C.Code Ann. § 38–61–70 (emphasis added). While we hold that it is within the legislature's power to statutorily define the meaning of "occurrence," it violates the Contract Clause to

apply this new definition retroactively as it substantially impairs pre-existing contracts by materially changing their terms. *Hodges,* 341 S.C. at 94, 533 S.E.2d at 585–86 (holding "[f]or purposes of Contract Clause analysis, a statute can be said to impair a contract when it alters the reasonable expectations of the contracting parties"); *Henry v. Alexander,* 186 S.C. 17, 194 S.E. 649 (1937) (holding a deviation from the terms of a contract constitutes an impairment of contract); *Superior Motors, Inc. v. Winnebago Indus., Inc.,* 359 F.Supp. 773, 777 (D.S.C.1973) (stating impairment of contract occurs when legislation "attempts to make material alterations in the character, terms or the legal effect of an existing contract").

▮▮▮ Because we hold that Act No. 26 substantially impairs Petitioner's contractual rights, the next question is whether the Act is reasonable and necessary to effectuate a legitimate legislative purpose. *Ken Moorhead Oil Co. v. Federated Mut. Ins. Co.,* 323 S.C. 532, 545, 476 S.E.2d 481, 488–89 (1996). "Traditional analysis of reasonableness and necessity focuses on such issues as (1) whether an emergency exists justifying the impairment; (2) whether the law was enacted to protect a basic societal interest, rather than a favored group; (3) whether the law is narrowly tailored to the emergency at hand; (4) whether the imposed conditions are reasonable; and (5) whether the law is limited to the duration of the emergency." *Id.* Considering these factors and given the lengthy and drawn out history of litigation in this area, we cannot conclude that the General Assembly needed to enact Act No. 26 in order to address a pressing emergency. Consequently, the retroactivity provision is neither necessary nor reasonable, and therefore, we hold it unconstitutional.

As a result of our holding above, we sever the unconstitutional portion from the body of the statute, which "remains complete in itself, wholly independent of that which is rejected, and is of such a character that it may fairly be presumed the legislature would have passed it independent of that which conflicts with the constitution." [4] *Joytime Distribs. & Amusement Co.,* 338 S.C. 634, 648–49, 528 S.E.2d 647, 654 (1999).

---

4. The Amici Curiae also assert that Act No. 26 violates the principles of federalism and the Commerce Clause. Specifically, they contend that Act No. 26 may affect essential terms of insurance agreements entered

## CONCLUSION

Thus, while we find that Act No. 26 of the South Carolina Acts and Joint Resolutions does not violate the separation of powers doctrine, is not unconstitutional special legislation and does not deprive Petitioner of equal protection, we hold the retroactivity provision of Act No. 26 unconstitutional in violation of the state and federal Contract Clauses. Act No. 26 may only apply prospectively to contracts executed on or after its effective date of May 17, 2011.

### ACT DECLARED UNCONSTITUTIONAL IN PART.

KITTREDGE and HEARN, JJ., concur.

BEATTY, J., concurring in part and dissenting in part in a separate opinion.

PLEICONES, J., has filed a separate opinion concurring with the opinion of Justice BEATTY.

Justice BEATTY (concurring in part and dissenting in part):

I agree with the majority's findings that Act No. 26 does not violate the separation of powers doctrine, is not unconstitutional special legislation, and does not deprive Petitioner of equal protection. Furthermore, I agree with the majority's resolution of Petitioner's arguments regarding the principles of federalism and the Commerce Clause. I, however, respectfully dissent as to the majority's holding that the retroactivity provision of Act No. 26 violates the state and federal Contract Clauses. I find no violation and would declare Act No. 26 constitutional in both substance and application.

---

in other states. To the extent that Act No. 26 is not limited to South Carolina, they claim the General Assembly improperly imposed its "public policy objections to the application of traditional occurrence definitions to construction cases involving faulty workmanship, on sister states." We find several procedural barriers prevent the Amici from presenting this argument. The Amici lack standing to assert their challenge, and their claim is not ripe for review as they posit a hypothetical scenario, which Petitioner does not raise and which may not come to fruition. *See James v. Anne's Inc.*, 390 S.C. 188, 193, 701 S.E.2d 730, 732 (2010) (recognizing that "[j]usticiability encompasses several doctrines, including ripeness, mootness, and standing," and precluding amici from raising an issue not raised by the named party under Rule 213, SCACR).

## I. Contract Clauses

Petitioner urges this Court to declare Act No. 26 invalid as the state and federal Contract Clauses render it unconstitutional. Petitioner is primarily concerned with the provision of the statute that states, "This section applies to any pending or future dispute over coverage that would otherwise be affected by this section as to all commercial general liability insurance policies issued in the past, currently in existence, or issued in the future." S.C.Code Ann. § 38–61–70(E) (Supp.2011).

Petitioner asserts the Act substantially impairs the contractual rights of the parties to existing contracts because Act No. 26 expands the meaning of the term "occurrence" and increases the risk that insurers previously agreed to insure. Petitioner further contends this interference with private contracts was not a justified exercise of legislative authority as there was no legitimate public purpose for the Act. Instead, Petitioner avers that Act No. 26 was "passed merely to suit the needs of a particularized sub-section of an industry by retroactively changing the bargain for which those particular insureds originally contracted."

At least facially, Petitioner's claim seems meritorious as Act No. 26 expressly provides for its retroactive application, which is generally disfavored due to the potential unfairness to the contracting parties. However, as will be discussed, I find that Act No. 26 is not an unconstitutional "retrospective law" as it constitutes a clarification, through codification, of extant law.

### a. Retrospective Legislation

Retrospective laws have been analyzed as follows:

One modern definition of a "retrospective law," often cited, is that every statute which takes away or impairs vested rights acquired under existing laws or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or considerations already passed is a retrospective statute. Legislation is considered retroactive if its application determines the legal significance of acts or events that occurred prior to the statute's effective date. A statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in

prior law; instead, *a court must ask whether the new provision attaches new legal consequences to events completed before its enactment.*

The mere fact that a statute has a retrospective application does not necessarily render it unconstitutional. For instance, a statute that merely clarifies rather than changes existing law does not operate retrospectively even if it is applied to transactions predating its enactment. The retroactive nature of clarifying legislation has limits and must not operate in a manner that would unjustly abrogate "vested rights." However, retroactive legislation presents problems of unfairness that are more serious than those posed by prospective legislation because it can deprive citizens of legitimate expectations and upset settled transactions.

16B Am.Jur.2d *Constitutional Law* § 735 (2009) (footnotes omitted) (emphasis added).

Applying the above-definitions, I find that Act No. 26 merely: (1) clarified this Court's decisions in *L–J, Inc. v. Bituminous Fire and Marine Insurance Company,* 366 S.C. 117, 621 S.E.2d 33 (2005) and *Auto Owners Insurance Company v. Newman,* 385 S.C. 187, 684 S.E.2d 541 (2009); and (2) preemptively codified *Crossmann.*

In analyzing the definition of "occurrence" in a CGL policy, this Court in *L–J* adhered to the majority rule that "faulty workmanship standing alone, resulting in damage only to the work product itself, does not constitute an occurrence under a CGL policy." *L–J, Inc.,* 366 S.C. at 121, 621 S.E.2d at 35. The Court reasoned that "faulty workmanship is not something that is typically caused by an accident or by exposure to the same general harmful conditions." *Id.* at 123, 621 S.E.2d at 36. The Court noted that a "CGL policy may, however, provide coverage in cases where faulty workmanship causes a third party bodily injury or damage to other property, *not in cases where faulty workmanship damages the work product alone." Id.* at 123 n. 4, 621 S.E.2d at 36 n. 4.

Four years later, the Court decided *Newman* wherein it relied on the analysis in *L–J* and found that a "subcontractor's negligence resulted in an 'occurrence' falling within the CGL policy's initial grant of coverage for the resulting 'property damage' to the [home]." *Newman,* 385 S.C. at 194, 684 S.E.2d at 545. In so ruling, the Court gave effect to the subcontrac-

tor exception to the "your work" exclusion in the standard CGL policy and recognized that this exclusion did not apply "if the damaged work or the work out of which the damage arises was performed on [policyholder's behalf] by a subcontractor." *Id.* at 195, 684 S.E.2d at 545.

As noted by the majority, the Court in *Crossmann* reaffirmed its decision in *Newman* and clarified that "negligent or defective construction resulting in damage to otherwise non-defective components may constitute 'property damage,' but the defective construction would not." *Crossmann*, 395 S.C. at 50, 717 S.E.2d at 594.

In comparison, Act No. 26 defines "occurrence," to include "property damage or bodily injury resulting from faulty workmanship, exclusive of the faulty workmanship itself." Thus, I find the definition in Act No. 26 is indistinguishable from those espoused by this Court in *L–J, Newman*, and *Crossmann.* Because Act No. 26 merely clarifies rather than changes existing law, it does not operate retrospectively even though it is applied to transactions predating its enactment. Thus, I conclude the retroactive application of the Act does not render it unconstitutional as a retrospective law. *See Segars v. Gomez*, 360 F.Supp. 50, 53 (D.S.C.1972) (discussing retroactivity and recognizing that the General Assembly "may ratify and validate any past act which it could originally have authorized provided it still has the power to authorize it, and its authorization does not impair vested rights"); *Moore v. Stills*, 307 S.W.3d 71, 81 (Ky.2010) (recognizing that statutory amendments that clarify existing law or codify judicial precedent do not come within the rule against retroactive legislation as "such amendments do not impair rights a party possessed when he or she acted or give past conduct or transactions new substantive legal consequences").[5]

### b. Existing Contracts

Even if Act No. 26 is deemed clarifying legislation, Petitioner claims the express retroactivity provision of Act No. 26 operates to abrogate the parties' vested rights. Thus, Peti-

---

5. Because the definition of "occurrence" in section 38–61–70 clearly gives effect to our decisions in *L–J* and *Newman* and preemptively codified our decision in *Crossmann*, I believe the majority mischaracterizes the General Assembly's enactment of section 38–61–70 as a "fundamental change" in the definition of occurrence in standard CGL poli-

tioner advocates for this Court to sever the provision from the Act. In analyzing Petitioner's argument that Act No. 26 impermissibly impairs existing contracts, I turn to a discussion of our state and federal Contract Clauses.

In restricting powers of the states, the United States Constitution provides that, "No state shall ... pass any ... law impairing the obligation of contracts." U.S. Const. art. I, § 10, cl. 1. Our state constitution contains a similar provision. S.C. Const. art. I, § 4. Accordingly, this Court has followed federal precedent construing the federal Contract Clause in analyzing the Contract Clause of the South Carolina Constitution. *Ken Moorhead Oil Co. v. Federated Mut. Ins. Co.,* 323 S.C. 532, 476 S.E.2d 481 (1996).

"The general purpose of the Contract Clause is to encourage trade and credit by promoting confidence in the stability of contractual obligations. While the Clause prohibits the government from arbitrarily impairing the obligations of contract, there must be a careful balancing of the competing interests involved." *Citizens for Lee County, Inc. v. Lee County,* 308 S.C. 23, 30, 416 S.E.2d 641, 645 (1992).

In discussing the Contract Clause, the United States Supreme Court stated, "Although the Contract Clause appears literally to proscribe 'any' impairment, ... 'the prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula.'" *U.S. Trust Co. of N.Y. v. N.J.,* 431 U.S. 1, 21, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977) (quoting *Home Bldg. & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 428, 54 S.Ct. 231, 78 L.Ed. 413 (1934)). "As with laws impairing the obligations of private contracts, an impairment may be consti-

---

cies as there is no evidence to support such a conclusion. It is evident the General Assembly was cognizant of the litigious history surrounding standard CGL policies and sought to rectify these problems through a statutory pronouncement that was entirely consistent with this Court's interpretation of these policies. Interestingly, *Newman* chronicled the history of CGL policies and stated that "interpreting 'occurrence' as we do in this case gives effect to the subcontractor exception to the 'your work' exclusion in the standard CGL policy." *Newman,* 385 S.C. at 195, 684 S.E.2d at 545. Thus, section 38–61–70 precisely codifies what Chief Justice Toal espoused in *Newman.* Simply stated, section 38–61–70 does nothing more than define occurrence without any discernable distinction from this Court's prior decisions, particularly *Newman.* In my opinion, the majority ignores the visible overlay of this Court's decisions with the statutory language of section 38–61–70.

tutional if it is reasonable and necessary to serve an important public purpose." *Id.* at 25, 97 S.Ct. 1505.

However, "[b]y attaching new and perhaps unanticipated legal consequences to past conduct, retroactive legislation threatens to 'deprive citizens of legitimate expectations and upset settled transactions.' " *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 176 (4th Cir.2010) (quoting *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 191, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992)).

To establish a Contract Clause violation, Petitioner must show: (1) the existence of a contract; (2) the law changed actually impaired the contract and the impairment was substantial; and (3) the law was not reasonable and necessary to carry out a legitimate government purpose. *Hodges v. Rainey*, 341 S.C. 79, 93, 533 S.E.2d 578, 585 (2000).

In view of my conclusion that Act No. 26 merely clarifies existing law, I would find that Petitioner has failed to satisfy the second prong of the above-outlined test as Petitioner cannot establish that Act No. 26 impaired existing CGL insurance contracts. Because the implicated term "occurrence" is part of the standard-form CGL policy, these contracts have not been impermissibly impaired as this term has been consistently defined and interpreted by this state's appellate courts and now codified by the General Assembly.[6] Accordingly, I would decline to sever the express retroactivity provision of Act No. 26.[7]

## II.  Conclusion

Although Petitioner raises multiple challenges attacking the constitutionality of Act No. 26, I find that none warrant the

---

6.  Furthermore, given that insurance is a highly-regulated industry, Petitioner's contractual rights could not have been substantially impaired as Petitioner was undoubtedly aware of the existing case law and the potential for regulation. *See Ken Moorhead Oil Co. v. Federated Mut. Ins. Co.*, 323 S.C. 532, 540, 476 S.E.2d 481, 486 (1996) ("In determining the extent of impairment to a contract, one must 'consider whether the industry the complaining party has entered has been regulated in the past.' " (quoting *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983))).

7.  The only contracts that could arguably be impaired would be those that were altered after January 7, 2011 in response to *Crossmann* and

invalidation of the enacted statute. In contrast to the majority, I do not believe Act No. 26 violates the state and federal Contract Clauses as the General Assembly enacted this provision to clarify existing law. Accordingly, I would declare Act No. 26 and, in turn, section 38–61–70 constitutional.

Justice PLEICONES, concurring.

I agree with Justice Beatty who rightly points out, in my opinion, that Act 26 merely codifies this Court's definition of occurrence. The majority relies on a statement in *Newman*[8] that a CGL policy *may* provide coverage where faulty workmanship causes third party bodily injury or damage to other property, contrasts it with the "shall" language of the statute, and concludes that the statute rewrites and expands the judicial definition of occurrence. I believe the majority misreads the *Newman* "may." At this juncture, the *Newman* court is discussing the facts of *L–J*, a case where there was no occurrence because the negligent construction of the roadway only caused damage to the road itself.[9] The *Newman* opinion then relates that the *L–J* court "went on to explain" that there may be coverage where the faulty workmanship causes third party injury or damage to other property. The *L–J* court was suggesting hypothetically that there would be coverage where the damaged property is not the defective work product but only if the other prong of occurrence is met, that is, if there were an accident.[10] In this context, the "may" suggests

---

entered into prior to May 17, 2011, the effective date of Act No. 26. The existence of such contracts appears unlikely as Petitioner notes that "[s]ince 1966, CGL insurance contracts, including contracts issued by Harleysville, have defined 'occurrence' as 'an accident, including continuous or repeated exposure to substantially the same general harmful conditions.' " Thus, the existing CGL contracts would have retained the standard-form definition of "occurrence."

8. *Auto Owners Ins. Co. v. Newman*, 385 S.C. 187, 684 S.E.2d 541 (2009).

9. There would be no occurrence under § 38–61–70(B)(2) because the only property damaged was the faulty workmanship itself.

10. Specifically, *L–J* is employing the subjunctive mood, discussing a hypothetical situation not present in that case.

merely that a different set of circumstances may lead to a different result, not that where there is an occurrence, the decision to find coverage is optional.

I agree with Justice Beatty that there is no constitutional infirmity in Act 26.