728 S.E.2d 32

**In the Matter of the Care and Treatment of Bobbie MANIGO, Petitioner.**

No. 27134.

Supreme Court of South Carolina.

Heard March 7, 2012.

Decided June 20, 2012.

150

Appellate Defender LaNelle Cantey DuRant, of Columbia, for Petitioner.

152

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Attorney General Deborah R.J. Shupe, and Assistant Attorney General William M. Blitch, Jr., all of Columbia, for Respondent.

Justice KITTREDGE.

We granted a writ of certiorari to review the court of appeals' decision in this matter. *In re Care & Treatment of Manigo*, 389 S.C. 96, 697 S.E.2d 629 (Ct.App.2010). Petitioner challenges his civil commitment to the Department of Mental Health for long-term control, care, and treatment pursuant to the Sexually Violent Predator Act ("SVPA"). Specifically, Petitioner contends that, although he has been convicted of a sexually violent offense, he is exempt from the SVPA evaluation procedure simply because his most recent offense is not explicitly designated as sexually violent. The court of appeals affirmed Petitioner's commitment, finding the language of the SVPA unambiguous and applicable to Petitioner. We affirm.[1]

## I.

In 1987, Petitioner was indicted for assault with intent to commit first-degree criminal sexual conduct ("CSC") after making sexual remarks to the victim and touching the victim on her breasts and vagina and pushing her to the ground in an attempt to have sex with her. Petitioner pled guilty to the

---

1. Although the issue of appealability has not been raised by the court of appeals or the parties, the dissent would vacate the decision of the court of appeals because it erroneously addressed the merits of an unreviewable order. The dissent correctly points out that the denial of summary judgment cannot be reviewed by interlocutory appeal. Moreover, Petitioner indicates on certiorari to this Court that the "Court of Appeals erred in denying [his] pretrial summary judgment motion...." We nevertheless elect to reach the merits of the certiorari petition, for the reality is that Petitioner appealed from final judgment, despite the erroneous reference to the denial of his summary judgment motion. The dissent notes that "[o]n direct appeal, petitioner raised a claim of error in the denial of his motion for summary judgment." What the dissent fails to mention is that on direct appeal Petitioner raised two additional evidentiary challenges from the trial. While those evidentiary challenges are now abandoned, they demonstrate that this appeal is from a final judgment. Because the legal issue before us was sufficiently preserved and Petitioner in fact appealed from final judgment, we address the legal question raised in the certiorari petition.

reduced charge of assault and battery of a high and aggravated nature. Petitioner was sentenced to ten years in prison, suspended upon service of two years in prison and five years of probation. Petitioner was also sentenced to alcohol, drug, and sex counseling.

While on probation following the 1987 conviction, Petitioner was again indicted for assault with intent to commit first-degree CSC. Petitioner knocked on the victim's door, forced his way into the house, grabbed the victim, and put his hand over her mouth. A struggle ensued, during which Petitioner pulled out a knife and pulled the victim into the yard. Once in the yard, Petitioner attempted to remove the victim's night-gown and panties, but the victim fought back and eventually escaped. In February 1990, Petitioner pled guilty to the reduced charge of assault with intent to commit second-degree CSC and was sentenced to twenty years in prison. During confinement, Petitioner committed eighty-three disciplinary infractions, of which three were assaultive and fifteen were for. sexual misconduct, including willfully and repeatedly exposing his penis to and masturbating in front of female correctional officers.

In 2004, prior to his release from prison, Petitioner was evaluated by the Department of Corrections multidisciplinary team, which found probable cause that Petitioner was a sexually violent predator ("SVP"). Following a hearing, the circuit court also found probable cause that Petitioner was an SVP and ordered Dr. Pam Crawford to perform a psychiatric evaluation. Petitioner was diagnosed with alcohol dependence and borderline intellectual functioning; however, regarding whether Petitioner required inpatient sex-offender treatment, Dr. Crawford concluded insufficient clinical evidence existed to support a finding that, to a reasonable degree of medical certainty, Petitioner was suffering from a sexual disorder, personality disorder, or other mental abnormality that would make it likely he would re-offend.[2] In April 2004, the SVP

---

2. Dr. Crawford was "very concerned" about Petitioner due to his pattern of sexually violent behaviors and history of alcohol abuse. However, given Petitioner's "sustained appropriate behavior" during the eighteen months preceding the evaluation, and that Petitioner received alcohol abuse treatment in prison, his family was "incredibly supportive," he had a job waiting for him, and he would receive

petition was dismissed and Petitioner was thereafter released from prison. Following his release, Petitioner's participation in sex-offender treatment was poor and he returned to using alcohol.

In October 2005, Petitioner was arrested on four counts of indecent exposure after exposing himself, urinating and masturbating in front of the victim. The victim was an employee of SCE & G who was conducting her route near Petitioner's home on the day of the incidents. Petitioner noticed the victim, turned around, and began walking towards her. Petitioner stood in the roadway and exposed himself to the victim. The victim continued to the next home along her route, and Petitioner walked towards the victim and urinated in front of her. The victim resumed her route, and Petitioner followed her and exposed himself a third time. Thereafter, Petitioner followed the victim onto a different street, exposed himself, and masturbated in front of her. At that point, the victim called 9–1–1 and reported the incidents. Petitioner pled guilty to one count of indecent exposure and was sentenced to three years in prison, suspended upon nine months in prison and two years of probation.

Prior to his release from prison, Petitioner was again referred for proceedings pursuant to the SVPA. The multidisciplinary team and the prosecutor's review committee found probable cause to believe Petitioner was an SVP. Following a hearing, the circuit court also found probable cause that Petitioner was an SVP and ordered Dr. Crawford to perform another psychiatric evaluation.

This time, Dr. Crawford opined, to a reasonable degree of medical certainty, that Petitioner was dangerous and would likely commit additional sexually violent acts against women. In addition to her previous findings of alcohol dependence and borderline intellectual functioning, Dr. Crawford diagnosed

---

mandatory outpatient sex-offender treatment while on probation, Dr. Crawford could not conclude to a reasonable degree of medical certainty that Petitioner required inpatient treatment. Dr. Crawford stated, "When I did my first evaluation I did not say he did not meet the standard, but I said there was not enough clinical information at that point to convince me he had to be inpatient. I still at that time thought he could be outpatient . . . ."

Petitioner with two sexual disorders: paraphilia[3] and exhibitionism.[4]

At trial, Petitioner argued he was not subject to the SVPA evaluation process because he was not presently confined for a sexually violent offense. At the time, section 44–48–40 read:

(A) When a person has been convicted of a sexually violent offense, the agency with jurisdiction must give written notice . . . one hundred eighty days before:

(1) the person's anticipated release from total confinement. . . .

Petitioner argued the legislature did not intend for the SVPA to encompass all offenses, and since Petitioner was serving time for an offense not classified as sexually violent, he was not subject to the SVPA evaluation process as a matter of law. The trial court disagreed and found section 44–48–40(A) does not require the most recent offense to be classified as sexually violent, and Petitioner was subject to the SVPA. The jury found the State proved beyond a reasonable doubt that Petitioner is an SVP. Thereafter, Petitioner was committed to the Department of Mental Health for long-term control, care, and treatment.

Petitioner appealed, arguing the SVP evaluation process is not triggered unless a person is currently confined for a sexually violent offense. Petitioner acknowledged his 1990

---

**3.** Paraphilia is a sexual disorder in which one becomes sexually aroused by having sex with a non-consenting adult. According to current understanding, paraphilia is a lasting disorder that cannot be cured; however, it can be treated with medication and therapy.

**4.** Exhibitionism is a sexual disorder in which one is sexually aroused by exposing their genitals for shock value. Dr. Crawford testified her diagnosis of exhibitionism was based on Petitioner's repeated disciplinary infractions in prison, the indecent exposure incident in which he followed and repeatedly exposed himself to the victim, and the circumstances of his 1990 conviction. Moreover, Petitioner's own expert also diagnosed him with exhibitionism and acknowledged that disorder, even unaccompanied by a paraphilia diagnosis, constituted a mental abnormality under the SVPA. See S.C.Code Ann. § 44–48–30(1) (Supp. 2011) (defining an SVP as a person who "(a) has been convicted of a sexually violent offense; and (b) suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment").

CSC conviction was a sexually violent offense but argues he was evaluated following his sentence in connection with that conviction and was determined not to be an SVP. Because the 2006 indecent exposure offense was not a sexually violent offense, Petitioner argues there was no conviction to trigger the SVP evaluation process a second time.

The court of appeals, like the trial court, rejected Petitioner's challenge and found the language of the SVPA was unambiguous and did not require the current offense and sentence to be a statutorily designated sexually violent offense. Rather, the SVPA only requires that a person "*has been* convicted of a sexually violent offense." The court of appeals relied on a Virginia case,[5] and distinguished the language of the Virginia SVPA from the language of the South Carolina SVPA.[6] The court of appeals further relied upon the legislative intent set forth in the SVPA which demonstrated a desire to identify and treat individuals suffering from a mental abnormality to prevent future acts of sexual violence:

> The General Assembly finds that a mentally abnormal and extremely dangerous group of sexually violent predators exists who require involuntary civil commitment in a secure facility for long-term control, care, and treatment. The General Assembly further finds that the likelihood these sexually violent predators will engage in repeated acts of sexual violence if not treated for their mental conditions is significant.

S.C.Code Ann. § 44–48–20 (Supp.2011).

We granted a writ of certiorari to review the court of appeals' decision.

## II.

 Petitioner argues the court of appeals erred because he was not subject to the SVPA since he was not confined for a

---

5. *Townes v. Virginia*, 269 Va. 234, 609 S.E.2d 1 (2005).

6. The Virginia SVPA by its terms applies only to a person "*who is incarcerated for a sexually violent offense.*" *Id.* at 3. In contrast, the South Carolina SVPA applies to any person who "*has been convicted* of a sexually violent offense.*" S.C.Code Ann. § 44–48–40 (emphasis added).

sexually violent offense. Petitioner argues that, although section 44–48–40 does not use present tense language in reference to confinement, it would lead to an absurd result if a person was subjected to the SVP evaluation process during incarceration for an offense that is not designated as sexually violent. Petitioner further argues the SVPA should be construed strictly against the State pursuant to the rule of lenity.[7] We disagree.

"Statutory interpretation is a question of law subject to de novo review." *Transp. Ins. Co. v. S.C. Second Injury Fund*, 389 S.C. 422, 427, 699 S.E.2d 687, 689 (2010). "The cardinal rule of statutory construction is that the intent of the legislature must prevail if it reasonably can be discerned from the words used in the statute." *Cabiness v. Town of James Island*, 393 S.C. 176, 192, 712 S.E.2d 416, 425 (2011). "These words must be construed in context and in light of the intended purpose of the statute in a manner which harmonizes with its subject matter and accords with its general purpose." *Id.* (internal quotations omitted). "[I]f the language is plain and unambiguous, we must enforce the plain and clear meaning of the words used." *Id.* "But if applying the plain language would lead to an absurd result, we will interpret the words in such a way as to escape the absurdity." *Id.* "A merely conjectural absurdity is not enough; the result must be so patently absurd that it is clear that the General Assembly could not have intended such a result." *Id.* (internal quotations omitted).

The court of appeals correctly found the language of the SVPA is unambiguous and does not require a person to be presently confined for a sexually violent offense to be subject to the SVP evaluation process. The definition of an SVP refers to someone who *"has been* convicted of a sexually violent offense." S.C.Code Ann. § 44–48–30(1). Further, section 44–48–40 provides notice must be given "[w]hen a person *has been* convicted of a sexually violent offense." Thus, we

---

7. The rule of lenity provides that typically, statutes that are penal in nature must be strictly construed in favor of a criminally accused and against the State. *See Cooper v. S.C. Dep't of Prob., Parole and Pardon Servs.*, 377 S.C. 489, 496, 661 S.E.2d 106, 110 (2008) (construing parole statute strictly against the State because it was penal in nature).

must enforce the plain meaning of those sections which, by their terms, do not require a person to be confined for a sexually violent offense for the SVPA evaluation process to commence.

Further, we disagree that applying the plain language of section 44–48–40 would lead to an absurd result. "[A] person's dangerous propensities are the focus of the SVP[A]." *In re Care & Treatment of Corley*, 353 S.C. 202, 207, 577 S.E.2d 451, 453–54 (2003). Accordingly, we believe the application of the SVPA should not turn on whether a person's most recent conviction was specifically designated as sexually violent, particularly where, as here, the most recent conviction is sexually oriented and demonstrates a substantial risk of future offenses. Rather, the determination of whether a person is an SVP must include consideration of all relevant circumstances. *See id.* (affirming admission of indictments notwithstanding appellant's willingness to stipulate to the prior convictions because "the details of appellant's prior offenses ... were relevant to the issue of whether appellant was likely to engage in acts of sexual violence again); *White v. State*, 375 S.C. 1, 9–10, 649 S.E.2d 172, 176 (Ct.App.2008) (noting evidence of prior sexual history, regardless of whether it resulted in a criminal conviction, is directly relevant to determining whether a person is an SVP). We believe it would lead to an absurd result to interpret the SVPA to require the release of an inmate, who has been convicted of a sexually violent offense, presently suffers from a mental abnormality, and is highly likely to re-offend, simply because he happens to be confined for an offense that is not enumerated in section 44–48–30(2). The legislature did not intend for that person to be required to commit another act of sexual violence before becoming subject to the SVPA.

Moreover, we reject Petitioner's invitation to apply the rule of lenity in this context because the terms of section 44–48–40(A) are clear and unambiguous on their face and there is no need to resort to the rules of statutory construction. *See Edwards v. State Law Enforcement Div.*, 395 S.C. 571, 575, 720 S.E.2d 462, 465 (2011) ("When a statute's terms are clear and unambiguous on their face, there is no room for statutory construction and a court must apply the statute according to its literal meaning."). Further, the rule of lenity is wholly

inapposite because the SVPA is a civil, non-punitive scheme. *See In re Treatment & Care of Luckabaugh,* 351 S.C. 122, 135–37, 568 S.E.2d 338, 344–45 (2002); *In re Care & Treatment of Matthews,* 345 S.C. 638, 648, 550 S.E.2d 311, 318 (2001) ("Our [SVPA] specifies the purpose of the Act is *civil* commitment."); *In re Care & Treatment of Canupp,* 380 S.C. 611, 617–18, 671 S.E.2d 614, 617 (Ct.App.2009) ("While the [SVPA] bestows some of the rights normally associated with criminal prosecutions, it is not intended to be punitive in nature; rather, it sets forth a civil process for the commitment and treatment of sexually violent predators."). Lastly, assuming any ambiguity, it was resolved by the legislature's 2010 amendment of section 44–48–40(A) substituting "If" for "When," which forecloses the interpretation Petitioner advances. *See Stuckey v. State Budget & Control Bd.,* 339 S.C. 397, 401, 529 S.E.2d 706, 708 (2000) ("A subsequent statutory amendment may be interpreted as clarifying original legislative intent.").

### III.

We find the broad language of section 44–48–40 demonstrates the legislature's intent for the SVPA to include any person who has been convicted of a sexually violent offense and presently suffers from a mental abnormality or personality disorder that makes the person likely to reoffend. Accordingly, we find Petitioner's civil commitment was proper pursuant to the procedure set forth in the SVPA.

**AFFIRMED.**

TOAL, C.J., BEATTY and HEARN, JJ., concur.

PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES.

I respectfully dissent. In my opinion, we must vacate the decision of the Court of Appeals because petitioner failed to properly preserve any statutory construction issue for appellate court review. On direct appeal, petitioner raised a claim of error in the denial of his motion for summary judgment.[8]

---

8. Petitioner's statement of the issue on appeal was "Did the trial court err in denying appellant's pretrial summary judgment motion when

An order denying summary judgment does not finally decide any issue on its merits. *E.g. Wright v. Craft*, 372 S.C. 1, 640 S.E.2d 486 (Ct.App.2006). Moreover, the denial of summary judgment cannot be reviewed by an interlocutory appeal nor can such an order be appealed after final judgment. *Olson v. Faculty House of Carolina, Inc.*, 354 S.C. 161, 580 S.E.2d 440 (2003).

Since the Court of Appeals erroneously addressed the merits of an unreviewable order, I would vacate that decision. *E.g., South Carolina Dep't of Transp. v. McDonald's Corp.*, 375 S.C. 90, 650 S.E.2d 473 (2007).

appellant was found not to be a sexually violent predator in 2004 just prior to his release from DOC and had committed no sexually violent offenses according to the Sexually Violent Predator Act since his release?" His sole issue on certiorari is "Whether the Court of Appeals erred by denying petitioner's pretrial summary judgment motion when petitioner was found not to be a sexually violent predator in 2004 just prior to his release from DOC and had committed no sexually violent offenses according to the Sexually Violent Predator Act since his release?" I note that petitioner's appellate counsel was only able to raise the issue by reference to summary judgment as trial counsel presented the issue to the trial judge through this motion.