# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

In the Matter of the Care and Treatment of Francis Arthur Oxner, Appellant.

Appellate Case No. 2016-001125

———————

Appeal From Lexington County
Diane Schafer Goodstein, Circuit Court Judge

———————

Opinion No. 5725
Heard October 10, 2018 – Filed May 6, 2020

———————

**AFFIRMED**

———————

Allen Mattison Bogan and Blake Terence Williams, both of Nelson Mullins Riley & Scarborough, LLP, and Chief Appellate Defender Robert Michael Dudek and Appellate Defender David Alexander; all of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Senior Assistant Deputy Attorney General Deborah R. J. Shupe, both of Columbia, for Respondent.

———————

**MCDONALD, J.:**  Francis A. Oxner appeals the circuit court's order requiring him to submit to an evaluation under the Sexually Violent Predator Act[1] (the Act), arguing the circuit court erred in finding he meets the definition of a person "convicted of [a] violent offense" for purposes of the Act.  He further contends the lapse of time between the State's filing of its petition for Oxner's evaluation as a sexually violent predator and the hearing on the State's petition constituted an

_____

[1] S.C. Code Ann. § 44-48-10 to -170 (2018).

unconstitutional delay.  Finally, Oxner asserts the circuit court's conducting of the hearing while he was incompetent to stand trial violated his right to procedural due process.  We affirm.

**Facts and Procedural History**

In 1984, Oxner was arrested for assault with intent to kill and driving without a license.   Oxner was diagnosed with schizophrenia while hospitalized at the South Carolina State Hospital; he was subsequently found incompetent to stand trial.  The record does not indicate when Oxner was released.

On December 11, 2004, Oxner's ten-year-old great-nephew (Victim 1) reported to the Lexington County Sheriff's Department (LCSD) that Oxner had forced him to engage in oral sex on multiple occasions.  After arresting Oxner for criminal sexual conduct (CSC) with a minor, investigators learned of other instances of abuse, including acts Oxner committed against his niece (Victim 2) when she was seven years old.  Victim 2 is Victim 1's mother.

In March 2005, the Lexington County grand jury indicted Oxner for several offenses: a February 2005 assault with intent to commit first degree CSC upon a boy under the age of eleven; a January 2005 first degree CSC with a minor for committing a sexual battery upon a boy under the age of eleven; a January 2005 "exposure of private parts in [a] lewd and lascivious manner" for exposing his genitals to a fourteen-year-old girl; an assault with intent to commit a sexual battery upon a seven-year-old girl alleged to have occurred between August 1, 1979, and June 1, 1980; and a 1980 offense of buggery with a pony.

On April 18, 2005, psychiatrist Richard Frierson evaluated Oxner to determine his competence to stand trial.  Dr. Frierson opined Oxner was incompetent but "likely to become fit to stand trial in the foreseeable future."  Following a hearing, the circuit court found Oxner incompetent, but the court's June 2005 order noted Oxner might become competent in the future.  The circuit court ordered that Oxner remain hospitalized and receive treatment for up to sixty days in an effort to restore competence.  This effort was unsuccessful, and in a subsequent order, the circuit court found Oxner incompetent to stand trial and not likely to become competent in the future.  Thus, in December 2005, Oxner's charges were *nolle prossed*, and he was admitted to the South Carolina Department of Mental Health's (DMH) secure inpatient forensic unit for treatment.  Each year following Oxner's 2005 admission, the probate court has ordered that Oxner be involuntarily committed to an inpatient state mental health facility.

On March 16, 2011, the probate court ordered Oxner to participate in an outpatient treatment program at a mental health facility for up to twelve months.

In early 2011, Oxner's DMH treatment team recommended he be discharged from the forensic unit to a structured residential care facility and referred Oxner to a multidisciplinary team for a determination of whether Oxner was a sexually violent predator. The multidisciplinary team determined Oxner met the statutory definition of a sexually violent predator and referred him to the prosecutor's review committee. The prosecutor's review committee determined there was probable cause to believe Oxner was a sexually violent predator, and on July 5, 2011, the State petitioned the circuit court for a probable cause determination.

In August 2011, the circuit court found probable cause existed to believe Oxner met the Act's criteria for a sexually violent predator. The circuit court determined the proceedings were subject to Section 44-48-100(B) of the South Carolina Code because Oxner had been found incompetent to stand trial. Section 44-48-100(B) provides:

> If the person charged with a sexually violent offense has been found incompetent to stand trial and is about to be released and the person's commitment is sought pursuant to subsection (A), the court first shall hear evidence and determine whether the person committed the act or acts with which he is charged. The hearing on this issue must comply with all the procedures specified in this section. In addition, the rules of evidence applicable in criminal cases apply, and all constitutional rights available to defendants at criminal trials, other than the right not to be tried while incompetent, apply. After hearing evidence on this issue, the court must make specific findings on whether the person committed the act or acts with which he is charged; the extent to which the person's incompetence or developmental disability affected the outcome of the hearing, including its effect on the person's ability to consult with and assist counsel and to testify on the person's own behalf; the extent to which the evidence could be reconstructed without the assistance of the person; and the strength of the prosecution's case. If, after the conclusion of the hearing on this issue, the court finds beyond a reasonable doubt that the person

committed the act or acts with which he is charged, the court must enter a final order, appealable by the person, on that issue, and may proceed to consider whether the person should be committed pursuant to this chapter.

S.C. Code Ann. § 44-48-100(B). The circuit court ordered:

A hearing shall be held before the Court within 72 hours after Respondent [Oxner] has been taken into custody, if he is not already in custody, to require the State to prove the elements of the criminal offenses for which Respondent has been charged, as provided for in S.C. Code Ann. Section 44-48-100(B) . . . and thereafter to contest whether probable cause exists to order that Respondent remain in custody and be evaluated by an appointed expert.

The circuit court also ordered the Lexington County clerk of court to appoint counsel for Oxner. Oxner's appointed counsel filed a discovery request on September 20, 2011, but other than this, the record is silent as to any progress on the State's petition until early 2014.

In March 2014, the Lexington County grand jury reindicted Oxner for assault with intent to commit CSC with a minor in the first degree for acts against Victim 2 alleged to have occurred from August 1, 1979 through June 1, 1980.

In May 2014, the circuit court ordered that Oxner be evaluated for competence. On September 8, 2014, Dr. Frierson again evaluated Oxner and opined Oxner lacked the capacity to stand trial and was "unlikely to gain the capacity to stand trial in the foreseeable future." Dr. Frierson noted the probate court had continued to order Oxner's commitment each year since his initial commitment in 2005.

In November 2015, the Lexington County grand jury reindicted Oxner for sexual battery upon a minor less than eleven years old for acts against Victim 1 alleged to have occurred "on or about the Summer of 2004." In September 2015, the circuit court appointed new counsel for Oxner.

On April 21, 2016, the circuit court held a § 44-48-100(B) evidentiary hearing; Victim 1, Victim 2, and LCSD Lieutenant Eric Russell testified. The circuit court found "beyond a reasonable doubt" that Oxner committed CSC with a minor, first

degree, upon Victim 1 and assault with intent to commit CSC with a minor, first degree, upon Victim 2.  After setting forth additional findings required by the statute, the circuit court held "probable cause exists to have [Oxner] evaluated under the Act to determine whether or not he suffers from a mental abnormality or personality disorder that makes him likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care and treatment."

**Standard of Review**

"Questions of statutory interpretation are questions of law, which we are free to decide without any deference to the court below."  *Buchanan v. S.C. Prop. & Cas. Ins. Guar. Ass'n*, 424 S.C. 542, 547, 819 S.E.2d 124, 126 (2018) (quoting *S.C. Prop. & Cas. Ins. Guar. Ass'n v. Brock*, 410 S.C. 361, 365, 764 S.E.2d 920, 922 (2014)); *see also In re Manigo*, 398 S.C. 149, 157, 728 S.E.2d 32, 35 (2012) ("Statutory interpretation is a question of law subject to de novo review." (quoting *Transp. Ins. Co. v. S.C. Second Injury Fund*, 389 S.C. 422, 427, 699 S.E.2d 687, 689 (2010))).

**Law and Analysis**

**I.  Statutory Definition**

Oxner argues this action must be dismissed because when the State filed the SVP petition, the sexually violent offenses for which Oxner was indicted had been *nolle prossed*.  Thus, without a pending charge for a sexually violent offense, the State could not satisfy the statutory prerequisite that Oxner was a person who "had been charged" but determined to be incompetent to stand trial for a sexually violent offense.  We disagree.

"The cardinal rule of statutory interpretation is to determine the intent of the legislature."  *Jones v. State Farm Mut. Auto. Ins. Co.*, 364 S.C. 222, 230, 612 S.E.2d 719, 723 (Ct. App. 2005).  "What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will.  Therefore, the courts are bound to give effect to the expressed intent of the legislature."  *State v. Jacobs*, 393 S.C. 584, 587, 713 S.E.2d 621, 622–23 (2011) (quoting *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000)).

"In interpreting a statute, the language of the statute must be read in a sense which harmonizes with its subject matter and accords with its general purpose."  *State v. Sweat*, 386 S.C. 339, 350, 688 S.E.2d 569, 575 (2010).  "Courts will reject a

statutory interpretation which would lead to a result so plainly absurd that it could not have been intended by the Legislature or would defeat the plain legislative intention." *Id.* at 351, 688 S.E.2d at 575.

The General Assembly enacted the Sexually Violent Predator Act in 1998[2] to create an involuntary commitment process for sexually violent predators, noting:

> The General Assembly finds that a mentally abnormal and extremely dangerous group of [sexually violent predators] exists who require involuntary civil commitment in a secure facility for long-term control, care, and treatment. The General Assembly further finds that the likelihood these [sexually violent predators] will engage in repeated acts of sexual violence if not treated for their mental conditions is significant. Because the existing civil commitment process is inadequate to address the special needs of sexually violent predators and the risks that they present to society, the General Assembly has determined that a separate, involuntary civil commitment process for the long-term control, care, and treatment of [sexually violent predators] is necessary.

S.C. Code Ann. § 44-48-20 (2018).

A "sexually violent predator" is defined as "a person who: (a) has been convicted of a sexually violent offense; and (b) suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment." S.C. Code Ann. § 44-48-30(1) (2018). Sexually violent offenses include first degree CSC with a minor, assault with intent to commit CSC, and buggery. S.C. Code Ann. § 44-48-30(2)(d), (i), (k) (2018).

> "Convicted of a sexually violent offense" means a person has:
>
> (a) pled guilty to, pled nolo contendere to, or been convicted of a sexually violent offense;

---

[2] 1998 Act. No. 321.

(b) been adjudicated delinquent as a result of the commission of a sexually violent offense;

(c) *been charged but determined to be incompetent to stand trial for a sexually violent offense*;

(d) been found not guilty by reason of insanity of a sexually violent offense; or

(e) been found guilty but mentally ill of a sexually violent offense.

S.C. Code Ann. §44-48-30(6) (2018) (emphasis added).

"The conviction requirement [of the Act] is used only for evidentiary purposes to show the existence of a past mental abnormality and dangerousness that is likely to recur if left untreated." *In re Treatment & Care of Luckabaugh*, 351 S.C. 122, 139, 568 S.E.2d 338, 346 (2002) (noting the "the use of the word 'conviction' include[s] 'persons charged but found incompetent to stand trial, those found not guilty by reason of insanity, and those found guilty but mentally ill'" (quoting *In the Care and Treatment of Matthews*, 345 S.C. 638, 649–50, 550 S.E.2d 311, 316 (2001))); *In re Manigo*, 389 S.C. 96, 101, 697 S.E.2d 629, 631 (Ct. App. 2010) (recognizing "[t]he statutes do not use present tense language, rather they state if the person has committed [a sexually violent] offense and meets the other qualifications set out in sections 44-48-30 and 44-48-40, then the person should be referred to the multidisciplinary team. The Act is unambiguous, and we must give meaning to its terms."), *aff'd*, 398 S.C. at 149, 728 S.E.2d at 32.

In 2005, the grand jury indicted Oxner for first degree CSC with a minor, buggery, and assault with intent to commit a sexual battery—all sexually violent offenses. These charges were *nolle prossed* after Oxner was found incompetent and not likely to become competent to stand trial. *See Mackey v. State*, 357 S.C. 666, 668, 595 S.E.2d 241, 242 (2004) ("A *nolle prosequi* is an entry by the prosecuting officer indicating that he has decided not to prosecute a case."); *id.* ("[I]f the *nolle prosequi* is entered prior to the jury being empaneled and sworn, there is no bar to further prosecution for the same offense because the innocence or the guilt of the defendant would not have been adjudicated." (quoting *State v. Patrick*, 318 S.C. 352, 358, 457 S.E.2d 632, 636 (Ct. App. 1995)). The State reindicted Oxner in 2014 and 2015 on some of the sexually violent offenses committed against Victims 1 and 2.

We find the circuit court properly determined Oxner met the statutory definition of a person "convicted of a sexually violent offense" for purposes of the State's 2011 SVP petition because Oxner *had been* charged with the predicate offenses and the statute makes no distinction between pending charges and charges *nolle prossed* due to a person's lack of competence to stand trial. *See In re Manigo*, 389 S.C. at 101, 697 S.E.2d at 631 (noting the Act does not require "the person to be currently serving an active sentence for a sexually violent offense" to be a sexually violent predator under the statutory definition). Notably, for purposes of satisfying the Act's conviction requirement, § 44-48-30 defines "convicted of a sexually violent offense" to include individuals who have "been charged but determined to be incompetent to stand trial for a sexually violent offense" as well as persons who have "been found not guilty by reason of insanity [or] been found guilty but mentally ill with respect to a sexually violent offense." S.C. Code Ann. § 44-48-30(6)(c)–(e); *see also* S.C. Code Ann. § 44-48-20 (finding "*a mentally abnormal and extremely dangerous group of sexually violent predators exists who require involuntary civil commitment in a secure facility for long-term control, care, and treatment*" and creating a "*separate, involuntary civil commitment process for the long-term control, care, and treatment*" for such persons (emphasis added)). Because the General Assembly contemplated competence issues would arise in cases involving sexually violent offenders, addressed these issues in the plain language of § 44-48-30 and § 44-48-100(B), and made no distinction between pending charges and charges dismissed due to the very competence issues the Act seeks to address, the circuit court properly declined to dismiss this matter.

## II. Unconstitutional Delay

Oxner contends the circuit court erred in finding no unconstitutional delay occurred between the State's filing of the 2011 petition and the 2016 evidentiary hearing. Oxner further asserts the circuit court should have dismissed the petition because a probable cause hearing was not held within the time mandated by the circuit court's 2011 order. We find these issues unpreserved for appellate review.

Cases involving individuals found incompetent to stand trial are complex and difficult, as our courts often have no clear mechanism for addressing the varied questions these cases present. The procedural and constitutional considerations are problematic, as is coordination among the various state agencies that may be involved. Still, neither Oxner's original appointed counsel nor his circuit court hearing counsel moved to dismiss the State's petition for lack of a timely hearing nor did they raise any prehearing procedural challenges to the speedy hearing

question. Although the clerk of court appointed Oxner's new counsel in September 2015, some seven months before the circuit court's April 2016 hearing, Oxner's new counsel first raised the question of timeliness halfway through the circuit court's hearing—after the evidence had been taken. Counsel stated, "So obviously my concern goes back to my initial constitutional concern is if this was filed in 2011, certainly this hearing wouldn't be timely and I'm just now noticing that because these were supposed to be held within a certain time frame within the program."

Because Oxner failed to timely raise this issue, the State did not have sufficient notice to present evidence addressing the status of Oxner's case and the treatment issues that arose from 2011 to 2016, the time period which Oxner contends constituted an unconstitutional delay.[3] However, even if counsel's timeliness comment were sufficient for us to find Oxner properly raised the issue, the circuit court did not rule on the timeliness question either at the hearing or in its order, and Oxner—through his prior counsel—did not file a Rule 59(e), SCRCP motion seeking a ruling. Therefore, this issue is not preserved for our review. *Pye v. Estate of Fox*, 369 S.C. 555, 564, 633 S.E.2d 505, 510 (2006) ("It is well settled that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court to be preserved."); *see also Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 24, 602 S.E.2d 772, 780 (2004) (recognizing that in order to preserve an issue that has been raised to the circuit court, but not ruled upon, a party must file a Rule 59(e), SCRCP motion).

### III.  Procedural Due Process

Oxner next argues the circuit court erred in finding his procedural due process rights were not violated because conducting SVP proceedings under § 44-48-100(B) while a person is incompetent is similar to trying a criminal defendant while he is incompetent to stand trial. We disagree.

"Procedural due process imposes constraints on governmental decisions that deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment of the United States Constitution." *Harbit v. City of Charleston*, 382 S.C. 383, 393, 675 S.E.2d 776, 781 (Ct. App. 2009) (citing *Mathews v. Eldridge*, 424 U.S. 319, 331 (1976)). "Due Process is not a technical concept with fixed parameters unrelated to time, place,

---

[3] During this time, Oxner remained committed under the probate court's yearly orders of commitment.

and circumstances; rather, it is a flexible concept that calls for such procedural protections as the situation demands." *State v. Legg*, 416 S.C. 9, 13, 785 S.E.2d 369, 371 (2016). "The fundamental requirements of due process include notice, an opportunity to be heard in a meaningful way, and judicial review." *Kurschner v. City of Camden Planning Comm'n*, 376 S.C. 165, 171, 656 S.E.2d 346, 350 (2008).

In determining what process is due, courts must consider the private interest affected by the official action, the risk of erroneous deprivation through the procedures used, the probable value of additional or substitute procedural safeguards, and the State's interests, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Considering the *Mathews* factors, we agree with the circuit court that Oxner's procedural due process rights were not violated when the court conducted the evidentiary hearing while Oxner was incompetent to stand trial. Here, the statute provides procedural safeguards for those deemed incompetent by requiring the circuit court to first find beyond a reasonable doubt that the person committed the acts alleged and evaluate the strength of the State's case before an individual may be committed, thus countering the risk of an erroneous deprivation of his liberty interest. S.C. Code Ann. § 44-48-100(B). Moreover, the circuit court's findings under § 44-48-100(B) may be appealed before any determination of whether an individual is to be committed as a sexually violent predator. *Id.* Oxner has not identified any additional or substitute procedural requirements—other than arguing a person must be competent to stand trial to be subject to civil SVP proceedings— that would better protect his liberty interest while balancing the State's interest in seeking an SVP determination.

Undoubtedly, the State has a compelling interest in committing sexually violent predators for treatment, whether or not issues exist that may affect their mental competence. As the General Assembly noted, "[A] mentally abnormal and extremely dangerous group of sexually violent predators exists who require involuntary civil commitment in a secure facility for long-term control, care, and treatment . . . the likelihood these sexually violent predators will engage in repeated acts of sexual violence if not treated for their mental conditions is significant." S.C. Code Ann. § 44-48-20. We find it significant that the Legislature considered the interests of incompetent individuals subject to the Act in codifying the procedures of § 44-48-100(B), including the high standard of proof mandated therein. This, along with the other procedural safeguards found throughout South Carolina's Act, provides substantial protection against an

erroneous deprivation of liberty. *See In re Det. of Morgan*, 330 P.3d 774, 779–80 (Wash. 2014) (en banc) (due process does not require a detainee to be competent for his SVP trial as "[r]obust statutory guaranties in [the Act] provide substantial protection against an erroneous deprivation of liberty" and "[i]t is irrefutable that the State has a compelling interest both in treating sex predators and protecting society from their actions.") (quoting *In re Young*, 857 P.2d 989, 1000 (Wash. 1993), *superseded by statute on other grounds*)).

Like Washington, other jurisdictions have rejected similar due process challenges, and found mentally incompetent individuals subject to SVP commitment processes. *See Moore v. Superior Court*, 237 P.3d 530, 532 (Cal. 2010) (granting petition "to decide whether the defendant in an SVP proceeding has a due process right not to be tried or civilly committed while mentally incompetent. Consistent with the conclusion reached by every out-of-state decision to consider the issue, the answer is 'no'"); *In re Commitment of Weekly*, 956 N.E.2d 634, 652 (Ill. App. Ct. 2011) (collecting cases and "finding it persuasive that every state to consider the issue has found that there is no due process right to be competent at a commitment proceeding under that state's version of the Act, with the limited exception of certain factual scenarios in Florida");[4] *In re Det. of Cubbage*, 671 N.W.2d 442, 448 (Iowa 2003) (rejecting a substantive due process challenge and denying detainee's request for a pre-trial competency proceeding); *In re Sykes*, 367 P.3d 1244, 1248 (Kan. 2016) (an individual does not have to be mentally competent to assist in his own defense in order to be civilly adjudicated a sexually violent predator under the Kansas Act); *Commonwealth v. Burgess*, 878 N.E.2d 921, 926 (Mass. 2008) (considering provision similar to South Carolina's § 44-48-100(B) and finding the provision "expresses an intent, on the part of the

---

[4] Florida has held a person subject to a SVP proceeding has a constitutional right to be competent under limited circumstances

> only when the State intends to present hearsay evidence of alleged facts that have neither been admitted by way of a plea nor subjected to adversarial testing at trial and so are subject to dispute and counterevidence. Thus, it is the State's trial strategy that will determine whether [a respondent] must be competent.

*In re Commitment of Branch*, 890 So. 2d 322, 329 (Fla. Dist. Ct. App. 2004). Here, the victims testified at Oxner's evidentiary hearing, and the circuit court found their testimony credible, articulate, and compelling.

Legislature, that [SVP] commitment proceedings go forward against an incompetent person, even one who may have limited comprehension of the proceedings."); *State v. Daniel OO.*, 928 N.Y.S.2d 787, 795 (N.Y. App. Div. 2011) (joining other jurisdictions in holding that given the State's "strong interest in providing treatment to sex offenders with mental abnormalities and protecting the public from their recidivistic conduct, we conclude [the SVP statute] does not deprive an incompetent respondent of his or her right to due process); *In re Commitment of Fisher*, 164 S.W.3d 637, 656 (Tex. 2005) (concluding that because the Act is civil, "due process does not require, as in a criminal proceeding, that [an individual] be competent to stand trial").

The Legislature anticipated that some sexually violent predator commitment proceedings might impact persons deemed incompetent to stand trial and enacted § 44-48-100(B) to provide for both a hearing procedure and appellate review in these circumstances. South Carolina's Sexually Violent Predator Act includes significant procedural safeguards that protect an incompetent person from the risk of an erroneous deprivation of his personal liberty interests, while addressing the State's compelling interests in providing treatment for sexually violent predators and protecting the public. Thus, we find no due process violation and affirm the circuit court's decision to conduct Oxner's evidentiary hearing.

**Conclusion**

Based on the foregoing, the circuit court's order requiring Oxner to submit to an evaluation and be detained in an appropriate secure facility pending trial pursuant to the Act is

**AFFIRMED.**

**KONDUROS and HILL, JJ., concur.**